This is an action by a lower property owner against an upper property owner for interfering with and channeling the natural drainage of water. The court found in favor of defendant. The issue on appeal is whether the trial court misapplied the law to the facts. We find that the trial court did so err and we reverse.
The trial court made the following finding of fact:
 Both the plaintiff and defendant's lots are located within the corporate limits of the City of Montgomery. The plaintiff is the lower land owner and the defendant owns property above the plaintiff's lot; however, the properties are not contiguous. A portion of the plat which reflects the relative location of the lots is appended to this Order. A ten (10) foot private drainage easement extends across the rear of the defendant's lot. The lot adjacent and to the north of the defendant is owned by Mr. Johnson.
 The plaintiff has resided on Lot 6, Block 22, of Johnstown Plat No. 1 since 1962. The plat was approved June 29, 1961. The defendant resides on Lot 13, Block 22, of Johnstown Plat No. 7, which was approved March 27, 1975. At the time the plaintiff built his residence, Johnstown Plat No. 7 had not been developed.
 Until the defendant constructed its residence, all surface water spread out and diffused laterally on the property behind the plaintiff's (Lots 12, 13 and 14 of Johnstown Plat No. 7).
 The defendant constructed its residence in 1978. The plans and specifications, including drainage specifications, were approved by the City of Montgomery. Class "C" drainage, which provides for drainage to the rear of the defendant's lot, was approved as it fit the natural slope of the defendant's lot. The defendant constructed two (2) swales, one of which runs across the middle of his lot to the rear; the other runs down the north property line. Both swales empty into the ten (10) foot drainage easement. There is no drainage ditch in the easement on the defendant's or on Johnson's (Lot 14) property.
 The plaintiff testified that he never had any flooding problem until after the defendant constructed its residence, and that it did not notice the unnatural flow until the retaining wall collapsed. Moreover, the plaintiff testified that there was no flow down the drainage easement until after the construction by the defendant. The plaintiff has now corrected the flooding problem to some extent by erecting a leaf barricade along a fence across the rear of his lot.
 Mr. Frank Garrett, a registered Civil Engineer, inspected the defendant's lot and viewed Mr. Johnson's lot. The swales conduct the water onto the drainage easement with great force; however, the Johnson's property at the easement is at a higher elevation than the defendant's property and the water will not flow across the easement. Because of this, the natural flow is onto the plaintiff's property. Mr. Garrett also testified that three or four other lots drain onto the defendant's lot. In conclusion, Mr. Garrett testified that the drainage easement is not suitable for drainage, and that Class "C" drainage is acceptable (R. 35, 36, 37.) *Page 1155 
The court thereafter entered "Conclusions of Law." We quote as pertinent:
This claim is grounded on negligence and trespass.
 There is no evidence that the defendant was negligent in the construction of the swales or evidence of any other negligent conduct. . . .
 The remaining issue is whether the defendant is liable for trespass for causing the water to flow onto the plaintiff's lot. . . .
The court continued thereafter to quote from the decision in the case of Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 59,300 So.2d 94 (1974) and from the Restatement of Torts, Second, § 158, Liability for Intentional Intrusions on Land. The law expressed by these quotations is that of trespass. Plaintiff in his complaint uses the word "negligent" in relation to the construction by defendant of drainage ditches. He also uses the word "trespass" in relation to the diverting and casting of water by defendant upon his property. However, we find it evident from the complaint as a whole, the testimony and the written brief and argument submitted by plaintiff to the trial court that the theory for recovery was the common-law right of a lower property owner not to be injured by the interference of an upper property owner with the natural drainage of water onto the lower property. That common-law right is not dependent upon the law of negligence or of trespass. It is a distinct and separate cause of action. Whether the manner of construction of the drains or channels which caused the surface water to be cast upon the property of plaintiff constituted negligence is not the test for right of recovery. The proper test is "whether or not by reason of that construction the surface water was changed from its natural flow and caused to be deposited on the complainant's property to his damage." Kay-Noojin DevelopmentCo. v. Kinzer, 259 Ala. 49, 54, 65 So.2d 510 (1953). The basis for liability in such cases is the positive wrong committed in casting surface water in unnatural quantities on the servient property, to its damage, by reason of the improvement of the superior estate. Tennessee Coal, Iron R. Co. v. Perolio,206 Ala. 403, 405, 90 So. 876 (1921). The rule is clearly stated in the decision of the court in the case of Kay-Noojin DevelopmentCo. v. Hackett, 253 Ala. 588, 45 So.2d 792 (1950) and restated in Kay-Noojin Development Co. v. Kinzer, supra, (these are companion cases arising from the same facts) as follows:
 An upper proprietor who collects surface water into a channel and casts it upon property of a lower proprietor to his damage, when if it were not so collected the water would be scattered and diffused, is liable for the damage though the property is located within an incorporated town or city. 259 Ala. at 55, 65 So.2d at 515.
The case of City of Mountain Brook v. Beatty, 292 Ala. 398,295 So.2d 388 (1974) and the more recent case of Mitchell v.Mackin, 376 So.2d 684 (1979) recognize and support the law stated in the Kay-Noojin decisions though they are distinguishable on their facts.
In summary, the statement of the facts as found by the court clearly establishes that defendant changed the natural drainage upon his upper lot and so channeled the water as to cause it to flow in more concentrated form onto the lower lot of plaintiff causing the collapse of two retaining walls. The court applied the law of negligence and trespass to the facts. It erred in so doing as those facts clearly showed plaintiff's right of recovery under the law applying to changing of the natural flow of surface water to the injury of a lower property owner.
This court holds that regardless of the use of the terms "negligence" and "trespass" by plaintiff in its statement of claim, it sufficiently stated a claim for relief and gave defendant fair notice thereof. The evidence showed plaintiff entitled to judgment. Under our present rules of civil procedure, it is the duty of the court to grant the relief to which the evidence shows the parties are entitled. Our present rules do *Page 1156 
not bind the plaintiff to a specific theory of pleading or the stating of a particular cause of action. The evidence presented establishes the cause of action and right to recovery. Rules 8 (a), (f), 15 (b), ARCP; Gins v. Mauser Plumbing Supply Co.,148 F.2d 974 (2d Cir. 1945).
Therefore, the judgment of the trial court is reversed and judgment is directed to be entered in favor of plaintiff after a determination by the court of the amount of damages due from defendant.
REVERSED AND REMANDED WITH DIRECTION.
BRADLEY and HOLMES, JJ., concur.