These consolidated cases involve claims alleging that the City of Montgomery has wrongfully allowed flooding of the plaintiffs' homes. The plaintiffs appeal from summary judgment in favor of the city. We reverse.
The plaintiffs allege that their homes, located on South Hull Street in Montgomery, have been subject to flooding for several years. They filed damage claims with the city and made numerous requests to have the drainage system in the area improved. They received no relief and filed suit in July 1981.
The complaints are in four counts. Count One states that the city "negligently caused the Plaintiffs' property and home to be flooded on numerous occasions in the past two years." Count Two states that the city's unsuccessful attempts to provide adequate drainage for ordinary rainfall has caused water to be cast upon the Plaintiff's property. In their briefs the parties treat Count Two as based upon a lower property owner's common-law right not to be injured by interference of an upper property owner with the natural drainage of water onto the lower property. Count Three states that the city's employees acted wantonly in failing to provide adequate drainage. Count Four states that the conditions created by the city constitute a nuisance. The relief sought was damages in the amount of $100,000 and an injunction prohibiting the city from permitting further flooding.
After the two cases were consolidated, the parties engaged in extensive discovery. The city then filed a motion for summary judgment, stating that the complaints fail to state a claim upon which relief can be granted, because the city has no duty to maintain proper drainage and prevent flooding. The motion also stated that any damages were not proximately caused by the city. Based on consideration of the pleadings, an affidavit and several depositions, the trial court granted summary judgment in favor of the city without explanation.
The question on appeal is the propriety of summary judgment on the following issues: (1) As to the negligence and wantonness counts, whether the city had a duty to control the drainage and flooding on the plaintiffs' respective properties. This is the threshold issue for both the negligence and wantonness counts, which the parties treated together in their briefs. (2) As to Count Two, whether the plaintiffs' common-law right to be free from interference by an upper property owner with the natural drainage onto their property created a claim against the city. (3) As to Count Four, whether the plaintiffs had claims to compensatory damages or injunctive relief based on the law of nuisance. Of course, at this stage in the proceedings, we are not determining the merits of these issues but only deciding whether there exist genuine disputes as to material facts, precluding judgment as a matter of law.
 I
Under Code of Ala. 1975, § 11-50-50, municipalities are authorized to construct and maintain drainage systems. However, a municipality is not required to exercise this authority. In general a municipality has no duty "to provide and maintain proper drainage of surface water from a resident's property to prevent flooding and damage to the property. That is a function committed to the municipality which calls for the exercise of governmental discretion." Hendrix v. Creel, 292 Ala. 541, 545,297 So.2d 364 (1974). Once the authority to construct or maintain a drainage system is exercised, a duty of care exists, and a municipality may be liable for damages proximately caused by its negligence. Fricke v. City of Guntersville, *Page 189 254 Ala. 370, 48 So.2d 420 (1950); City of Birmingham v. Flowers,224 Ala. 279, 140 So. 353 (1932). This reflects the familiar tort principle that liability may arise from the negligent performance of a voluntary undertaking. Beasley v. MacDonaldEngineering Co., 287 Ala. 189, 193, 249 So.2d 844 (1971).
Here, the city relies on Hendrix v. Creel, supra, and Hurseyv. City of Mobile, 406 So.2d 397 (Ala. 1981), to argue that it has never undertaken to limit what is simply natural drainage of surface waters onto the plaintiffs' properties. In Hendrix
the Court found that the City of Dothan had no duty to maintain drainage through a watercourse that followed the natural contour of the land, where the city's previous use and maintenance of the watercourse to drain adjacent properties was not sufficient to create an easement by prescription. In Hursey
the City of Mobile held a drainage easement in a ditch that followed the natural fall of the land. This Court found that the city had no duty to maintain drainage, because the city had not constructed the ditch and had cleared it only twice in ten years.
In the present case a drainage ditch or swale runs along the rear lot lines of the plaintiffs' properties, where the city holds an easement (as in Hursey). The city contends that this ditch simply follows the natural fall of the land as in Hursey
and Hendrix, while the plaintiffs' argue that this ditch is an integral part of an inadequate drainage system. Flooding occurs in periods of above average rainfall, when this ditch and the 12-inch pipe into which it passes become insufficient to hold all the water that flows onto the plaintiffs' properties. Evidence was presented that the problem could be remedied only by spending $500,000 to $1,000,000 to install larger drainage pipes in the area.
The plaintiffs' position is that the city's right to drainage through the easement "carries with it the corresponding duty to maintain the ditch in such a condition that the water cast into the ditch by the city not cause it to overflow." City ofMountain Brook v. Beatty, 292 Ala. 398, 406, 295 So.2d 388
(1974). In our view this case, rather than Hursey and Hendrix, applies (1) if the city has undertaken control of the drainage system for the plaintiffs' properties and (2) if waters from the city's drainage system — rather than natural drainage of surface waters — caused the flooding problems.
From review of the materials submitted by the parties in support of their positions, it is clear that a genuine dispute exists on these two factual matters. For example, the affidavit of the city maintenance superintendent states that routine maintenance of the area's drainage system includes inspection and clearing of the ditch that traverses the plaintiffs' lots. In depositions the city engineer indicated that the water from the area was channeled into the ditch across the plaintiffs' land. Such evidence is sufficient to establish that summary judgment was inappropriate on Counts One and Three.
 II
Count Two of the complaints is based on the common-law right of a lower property owner not to be injured by interference of an upper property owner with the natural drainage of water onto the lower property. See generally Mitchell v. Mackin,376 So.2d 684 (Ala. 1979). As the Court of Civil Appeals has noted, this is a distinct cause of action, not dependent upon proof of negligence or trespass. Sargent v. Lambert Construction Co.,378 So.2d 1153 (Ala.Civ.App. 1979). We believe that this cause of action is inapplicable, because the city is not an upper property owner. The cases cited by the plaintiffs involve adjoining landowners and do not support their position. The relation between the parties in those cases is not comparable to the relation between the city and the plaintiffs here.
 III
Count Four and the prayer for injunctive relief in each complaint are based on the law of nuisance. The statutory definition of a nuisance is *Page 190 
 "anything that works hurt, inconvenience or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. . . ." Code of Ala. 1975, § 6-5-120.
However, the lawfulness of the act complained of, though irrelevant to a claim for money damages, does affect the availability of injunctive relief. "[P]roof of negligence is required to sustain injunctive relief ordering abatement of a nuisance when the conduct giving rise to the conditions complained of was expressly authorized by legislative act."City of Birmingham v. City of Fairfield, 375 So.2d 438, 441
(Ala. 1979). Here, the parties agree on the applicability of this rule, since Code of Ala. 1975, § 11-50-50, authorizes construction of municipal drainage systems.
The city apparently rests on the contention that it had no legal duty and therefore could not be negligent. We have already held that the plaintiffs are entitled to a trial on the negligence and wantonness counts since they may be able to establish that the city violated a duty of care. Accordingly, the summary judgment must also be reversed on the issue of injunctive relief for abatement of the alleged nuisance.
The city does not discuss in brief whether the conditions complained of constituted a nuisance, entitling the plaintiffs to compensatory damages. Rather, the city argues in reference to both nuisance and negligence, that the courts have no authority to review a policy decision concerning maintenance or improvement of the city's drainage system. This argument reflects a misunderstanding of the issues presented for decision. We hold only that the plaintiffs are entitled to a trial to prove the existence of a nuisance and of a duty of care. Further exploration of the factual matters discussed above is necessary to determine if the city engaged in a nonreviewable policy decision or in culpable conduct, either negligent or wanton.
The judgment below must be affirmed as to Count Two, reversed as to Counts One, Three and Four, and remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.